# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **SHANNON WAYNE GARRISON** and **CONNIE SUE GARRISON,** | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| | ) **Civil Action No.** _____ |
| v. | )<br>) |
| **STURM, RUGER & COMPANY, INC.**, a foreign corporation; | ) **JURY TRIAL DEMANDED**<br>)<br>) |
| Defendant. | ) |

## COMPLAINT

Come now the Plaintiffs, Shannon Wayne Garrison and Connie Sue Garrison, and bring this civil action to recover damages against the above-named Defendant. For their cause of action, Plaintiffs would show unto the Court the following, to wit:

## STATEMENT OF THE PARTIES

1. Plaintiffs, Shannon Wayne Garrison and Connie Sue Garrison (hereinafter "Plaintiffs"), are resident citizens of Morgan County, Alabama and are over the age of nineteen (19) years.

2. The Defendant, Sturm, Ruger & Company, Inc. (hereinafter "Ruger"), is a for profit corporation organized and existing under the laws of the State of

1

Delaware with its principal place of business located at 1 Lacey Place, Southport, Connecticut 06890. Ruger does business in Southport, Connecticut, in the State of Alabama and elsewhere throughout the United States.

3. For each of the recent years Ruger has manufactured and sold more than one million firearms in the United States. Each of these firearms has been sold and delivered by Defendant Ruger for the purposes of resale through a distribution chain throughout the United States and the State of Alabama.

## JURISDICTION AND VENUE

4. Plaintiffs are citizens of the State of Alabama. Defendant Ruger is a foreign corporation incorporated under the laws of the State of Delaware with its principal place of business in the State of Connecticut. The amount in controversy, without interest and costs, exceeds the sum of value specified by 28 U.S.C. § 1332.

## STATEMENT OF FACTS

5. Plaintiff, Shannon Wayne Garrison, is the owner of a .41 caliber Ruger Blackhawk revolver which was manufactured and sold by Defendant, Sturm, Ruger & Company, Incorporated (hereinafter "the firearm").

6. On or about September 21, 2014, Plaintiff Shannon Wayne Garrison was at the Capsy Hunting Club in Winston County, Alabama driving an Alternate Terrain Vehicle (ATV) and checking game cameras. Plaintiff was carrying his firearm un-cocked with the hammer in the full down position with one round of

ammunition in each of the revolver's six chambers. Plaintiff had the firearm secured in a holster which was buttoned and fastened to Plaintiff's hip.

7. As Plaintiff was driving the ATV through the hunting camp he travelled over slightly uneven terrain and traversed a small bump that jarred the ATV causing the subject firearm to fall out of Plaintiff's holster.

8. When the firearm fell out of the holster it struck the ground and discharged.

9. The bullet struck Plaintiff and traveled through the top of his ankle, through his calf muscle, into his hamstring, through his groin and then through his stomach and midsection. After tearing through flesh, muscle, and bone the bullet finally came to rest and lodged itself a few inches from Plaintiff's heart, where it remains to this day.

10. Plaintiff consequently fell off of the ATV and struck the ground. Plaintiff searched for and found his cell phone intending to call 911, but did not have a signal. Plaintiff managed to climb back on his ATV and drive to his truck which was some distance away.

11. Plaintiff was able to reach his vehicle and fortunately was able to drive to a local residence that was only a few miles away. The local resident assisted Plaintiff in communicating with the 911 operator and, upon arrival of

emergency personnel, he was immediately airlifted from the resident's house by helicopter to Huntsville Hospital in Huntsville, Alabama.

12. As a result of the unintended discharge of his Ruger firearm, Plaintiff was forced to undergo multiple surgeries, extensive medical treatments, a prolonged hospital stay, and a painful rehabilitation regimen. Plaintiff, Connie Sue Garrison, was forced to stay home and spend approximately twelve weeks caring for Mr. Garrison as he began his long recovery process.

13. Plaintiff developed a number of painful medical complications as a result of the unintended discharge and still suffers from severe pain and mental and emotional distress. Upon information and belief, Plaintiff could be forced to undergo additional surgical procedures in the near future.

14. As a direct and proximate cause of Defendant's tortious, negligent, and/or wanton conduct, Plaintiff suffers and will continue to suffer the adverse physical, mental, and emotional effects of his catastrophic injuries for the rest of his natural life.

## **GENERAL ALLEGATIONS**

15. Defendant, at all times material hereto, either personally or through an agent or representative:

   a. Operated, conducted, engaged in or carried on a business venture in Alabama, and/or the United States, and/or has an office or agency in this State, and/or in this country; and/or

   b. Was engaged in the solicitation and/or performance of service activities within the State; and/or

   c. Delivered products which it manufactured to Alabama including the subject firearm, in the ordinary course of commerce, trade or use; and/or

   d. Was engaged in substantial and not isolated activity within the State.

16. Ruger designed, tested, developed, manufactured, marketed, advertised, distributed and sold the subject firearm that caused the harm and injuries of Plaintiffs.

17. Ruger caused the subject firearm to be distributed and sold in various states within the United States, including the State of Alabama where Plaintiffs reside.

18. Ruger expected the firearm to reach the user, including the Plaintiff, in substantially the same condition it was in when it was manufactured and when it left the custody and control of Ruger, and/or its agents and representatives.

19. Plaintiff purchased the firearm and maintained it in a condition which was without substantial change from the condition it was in when it left the custody and control of the Defendants and/or their agents and representatives.

20. Ruger specifically designed and manufactured the subject firearm with an external hammer that must be cocked before the trigger can be pulled; the hammer being functionally incapable of being cocked simply by pulling the trigger. The external hammer has a safety notch that is engaged by the sear of the

trigger when the hammer is in its safe position out of contact with a cartridge received in the chamber of the firearm.

21. Ruger designed and manufactured the subject firearm to allow the hammer to be placed in any one of four positions: the full down "fired" position, at which the hammer and firing pin rest against a cartridge received in the chamber of the firearm; the "safe" position, at which the trigger engages the safety notch formed in the hammer; the "loading" position or notch which, when engaged by the trigger, maintains the hammer in its loading position; and the "fully cocked" position, at which the trigger sear engages the sear notch of the hammer.

22. At the time this firearm was manufactured, Ruger did not utilize the improved firing mechanism design for external hammer firearms, but purposely retained another firing mechanism design that was over 100 years old at the time.

23. According to Ruger, "the loaded firearm is normally carried with the hammer in its safe position at which the safety notch of the hammer is engaged by the trigger." However, the safety notch of the hammer is defectively designed and unreasonably dangerous. Ruger has admitted the safety notch of the hammer is defectively designed – stating that "the safety notch of the hammer is a point of mechanical weakness in the design" of this firearm "with the consequent danger of accidental discharge if the hammer or trigger are accidently struck when the hammer is in its presumed safe position." Ruger also has admitted that the firearm

is unreasonably dangerous – stating that the firearm as designed is "potentially dangerous."

24.     Plaintiff was using and operating the subject firearm for the purpose and in the manner for which it was intended to be used, and in a manner that was foreseeable to Defendant.

25.     Plaintiff's firearm is defectively designed and unreasonably dangerous as the firearm was manufactured and sold with neither a transfer bar safety or a hammer block safety, a firing mechanism design which was readily available to Ruger at the time of design and manufacture of Plaintiff's firearm.

26.     As a direct and proximate cause of Defendant's tortious, negligent, and/or wanton conduct, Plaintiff, Shannon Wayne Garrison, suffers and will continue to suffer the adverse physical, mental, and emotional effects of his catastrophic injuries for the rest of his natural life.

## COUNT I
## NEGLIGENCE

27.     Plaintiffs reallege the allegations of paragraphs one (1) through twenty-six (26) above and incorporates them herein.

28.     At all times material, Defendant owed a duty of reasonable care to Plaintiff and to other foreseeable users of the subject firearm to design, equip, and manufacture the firearm in a manner safe for its foreseeable users.

7

29. Defendant negligently breached the duty of care it owed to Plaintiff in one or more of the following ways:

   a. failing to properly design, equip, and manufacture the firearm with safety devices which would prevent the unintended discharge;

   b. designing and manufacturing the subject firearm such that unintended discharge can occur when the hammer is in any of the four available hammer positions: full down (Fired Position), ¼ cock (Safety Position), half cock (Loading Position), or full back position (Full Cock Position);

   c. failure to design, equip, and manufacture the subject firearm with a transfer bar safety;

   d. failure to design, equip, and manufacture the subject firearm with a hammer block safety design;

   e. designing and manufacturing a firearm that would discharge without pulling the trigger;

   f. designing and manufacturing a firearm that would discharge when the hammer is engaged in the ¼ cock (safety position);

   g. failing to employ available alternative designs which would have prevented the firearm from discharging as it did and severely injuring the Plaintiff, Shannon Wayne Garrison;

   h. failing to use and apply good, safe, usual, prevailing, and reasonable engineering principles and standards in designing, equipping, manufacturing, marketing, and distributing the subject firearm;

   i. failing to maintain proper records and data of incidents, complaints, malfunctions, inspections, and testing;

   j. failing to adequately design, manufacture, test and monitor the subject model firearm;

8

  k. failing to warn of all of the above; and

  l. other acts of negligence to be determined through discovery.

30. Defendant negligently designed the firearm.

31. It could have been reasonably anticipated by Defendant that the firearm would become inherently or imminently dangerous to human life or health when put to its intended, ordinary, and customary use.

32. The firearm became inherently or imminently dangerous to human life or health when put to its intended, ordinary, and customary use.

33. That when the firearm was placed on the market it was inherently or imminently dangerous to human life or health.

34. As a direct and proximate cause of Defendant's negligence, Plaintiff was caused to suffer extensive harm and injuries.

WHEREFORE, Plaintiffs demand judgment against Defendant for all damages, including punitive damages, plus costs, such interest and attorney's fees as may be allowed by law and demands trial by jury of all issues so triable.

## COUNT II
## ALABAMA EXTENDED MANUFACTURERS' LIABILITY DOCTRINE

35. Plaintiffs reallege the allegations of paragraphs one (1) through thirty-four (34) above and incorporates them herein.

36.     At the time of the incident made the basis of this lawsuit and for a substantial period of time prior thereto, Defendant was engaged in the business of designing, manufacturing and/or having manufactured, selling, delivering, and/or distributing the subject firearm throughout the United States, including the state of Alabama, for use by certain members of the general public. Defendant during said period of time and for valuable consideration, designed, manufactured, or had manufactured to its specifications, and then sold, delivered, and/or distributed the subject firearm which catastrophically injured the Plaintiff.

37.     The subject firearm was in substantially the same condition as when it was manufactured, sold, and/or distributed by Ruger and was being used in a manner that was foreseeable and for its intended use. The firearm was not reasonably safe when being used in a foreseeable manner but to the contrary, it was defective and unreasonably dangerous to consumers when being so used. Ruger knew or in the exercise of reasonable care should have known that said firearm was unreasonably dangerous to consumers when being so used in a foreseeable manner. The firearm made the basis of this lawsuit was:

   a. defective due to the manual safety feature of the first hammer notch position, the ¼ cock "safety" notch being inadequate to keep the firearm from firing and causing injury or death when impact occurred to the firearm's hammer;

   b. defective due to the firearm's ability to discharge from being dropped without trigger pull when the hammer is in any of the four hammer positions: full down (Fired Position), ¼ cock (Safe

Position), half cock (Loading Position), or full back position (Full Cock Position);

c. defective due to the firearm's ability to discharge regardless of the hammer position;

d. defective due to a flaw that was present when Defendant manufactured the firearm;

e. defective due to the failure of Defendant to adequately warn of the risk or hazard associated with the firearm;

f. defective due to the absence of a safer alternative design, including, a transfer bar safety; and

g. defective due to the absence of a safer alternative design, including, a hammer block safety.

38. The foregoing wrongful conduct of Defendant was a proximate cause of Plaintiffs' injuries and renders Defendant liable to Plaintiffs pursuant to the Alabama Extended Manufacturer's Liability Doctrine.

39. Plaintiffs' injuries would have been eliminated or in some way reduced by an alternative design, and the utility of the alternative design outweighed the utility of the design Ruger actually used.

WHEREFORE, Plaintiffs demand judgment against the Defendants for all damages, including punitive damages, plus costs, such interest and attorney's fees as may be allowed by law and demands trial by jury of all issues so triable.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

40. Plaintiffs reallege the allegations of paragraphs one (1) through thirty-nine (39) above and incorporates them herein.

41. No privity of contract between Plaintiffs and Defendant is required and a breach of implied warranty of merchantability exist against all sellers of goods, including the manufacturer, in favor of any injured person if it was reasonable to expect that such that such persons as Plaintiffs would be affected by the breach of warranty.

42. Defendant was a merchant, or seller, or manufacturer with respect to the subject firearm.

43. Defendant sold and/or manufactured the firearm.

44. The firearm was being used for the ordinary purposes for which such products are used.

45. The firearm was defective, or unmerchantable, i.e., not fit for the ordinary purposes for which such products are used.

46. The defect in the firearm proximately caused injury to Plaintiffs.

47. Defendant was on notice of the breach of implied warranties at the time the firearm was manufactured and distributed by Defendant. Defendant knew, or should have known about the defects.

WHEREFORE, Plaintiffs demand judgment against the Defendant for all damages, including punitive damages, plus costs, such interest and attorney's fees as may be allowed by law and demands trial by jury of all issues so triable.

## COUNT IV
## STRICT LIABILITY IN TORT – RESTATEMENT (SECOND) OF TORTS § 402A

48. Plaintiffs reallege the allegations of paragraphs one (1) through forty-seven (47) above and incorporates them herein.

49. Defendant designed the subject firearm with the defects, rendering the firearm inherently dangerous and creating a substantial, clear, extreme and unreasonable risk of serious injury or death to Plaintiff.  Defendant manufactured, assembled, marketed, distributed, and sold the firearm with the defects.  The firearm was in the same defective condition due to the defects from the time it left Defendant's control until it reached Plaintiff, and Plaintiff used the firearm in the manner intended by Defendant.

50. The subject firearm was sold in substantial and unreasonably dangerous condition to an extent beyond that which would be contemplated by the ordinary consumer, including, Plaintiff.

51. As a direct and proximate result of the facts alleged above, Plaintiff was exposed to a clear, substantial, and unreasonable risk of serious injury or death from the defects and was suffered serious injury as a result.

52. Defendant is strictly liable in tort for all injuries, damages, and losses that have or may result from the unintentional and unwanted discharge of the firearm.

WHEREFORE, Plaintiffs demand judgment against the Defendant for all damages, including punitive damages, plus costs, such interest and attorney's fees as may be allowed by law and demands trial by jury of all issues so triable.

## COUNT V
## LOSS OF CONSORTIUM

53. Plaintiffs reallege the allegations of paragraphs one (1) through fifty-two (52) above and incorporates them herein.

54. At the time of the incident made the basis of this Complaint and at present, Plaintiff, Connie Sue Garrison, was the lawful wife of Plaintiff, Shannon Wayne Garrison. They have been a married couple for over sixteen (16) years. As a result of the serious, life threatening medical complications and injuries to her husband, Shannon Wayne Garrison, as well as the extended rehabilitation that he has undergone and continues to undergo, Connie Sue Garrison has lost the consortium, society, companionship, love, affection, aid, cooperation, sexual relations, comfort, services and other rights growing out of her marriage covenant with her husband.

55. Plaintiff further avers that the conduct of Defendant, Ruger, combined and concurred to cause Shannon Wayne Garrison to be severely injured which resulted in numerous medical complications that proximately caused Connie Sue Garrison to suffer the loss of consortium, society, companionship, love, aid, cooperation, sexual relations, comfort, services and affection of her husband.

WHEREFORE, premises considered, Plaintiff, Connie Sue Garrison, respectfully demands judgment against Defendant, jointly and severally, for compensatory and punitive damages, in an amount, including interest and costs of this action, which Plaintiffs seek to recover, to be assessed by the trier of fact and demands trial by jury of all issues so triable.

**PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY ON ALL CAUSES IN THE ABOVE COMPLAINT.**

DATED this the 20th day of September, 2016.

*Attorneys for Plaintiffs*:

/s/ M. Todd Wheeles
M. Todd Wheeles (ASB-5177-I65W)
Matthew G. Garmon (ASB-8225-X37K)
**MORRIS HAYNES WHEELES KNOWLES & NELSON**
3500 Colonnade Parkway, Suite 100
Birmingham, AL 35243
T: (205) 324-4008
F: (205) 324-0803
E: twheeles@mhhlaw.net
   mgarmon@mhhlaw.net

/s/ David L. Selby, II
David L. Selby, II (ASB-6994-Y62D)
Matthew J. Ford (ASB-6725-W58F)
**BAILEY & GLASSER, LLP**
3000 Riverchase Galleria, Suite 905
Birmingham, AL 35244
T: (205) 988-9253
F: (205) 733-4896
E: dselby@baileyglasser.com
   mford@baileyglasser.com